UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

DIANA PADILLA-IBAÑEZ,

    Plaintiff,

    v.

LEXMARK INTERNATIONAL, INC.,
et al.,

    Defendants.

Civil No. 08-1821 (JAF)

## OPINION AND ORDER

Plaintiff, Diana Padilla-Ibañez, brings this case against
Defendants Lexmark International, Inc. ("Lexmark"); Jairo Fernández,
Fernández' wife and their conjugal partnership; William D. Martin,
Martin's wife and their conjugal partnership; Luis Viloria, Viloria's
wife and their conjugal partnership; Antonio Díaz, Díaz' wife and
their conjugal partnership; and ten unknown insurance companies.
(Docket No. 1.) Plaintiff accuses Defendants of sex discrimination,
harassment, and retaliation, and national origin discrimination, in
violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),
42 U.S.C. §§ 2000e to e-17; age discrimination, harassment, and
retaliation in violation of the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. §§ 621-34; violation of the Equal Pay Act, 29
U.S.C. § 206(d)(1); and violation of Puerto Rico laws. (Id.)
Defendants move for summary judgment under Federal Rule of Civil

Civil No. 08-1821 (JAF)                                              -2-

1   Procedure 56(c). (Docket No. 41.) Plaintiff opposes (Docket No. 54),

2   and Defendants reply (Docket No. 59).

3                                  **I.**

4                    **Factual and Procedural History**

5        We derive the following facts from the parties' motions,

6   statements of uncontested material facts, and exhibits.[1] (Docket

7   Nos. 41, 42, 53, 54, 55, 58, 59, 60, 66.)

8        Plaintiff was born on May 28, 1962. (Docket No. 53-2.) She began

9   working for Lexmark as a sales representative on August 16, 2000.

10  (Id.) Lexmark is a business that manufactures and sells office

11  printers. (Docket No. 42-2.) Plaintiff's primary duties were to sell

12  Lexmark products and services and to maintain business relations with

13  Lexmark's clients. (Docket No. 42-11 at 6-7.) Her peers at Lexmark

14  were Luis Cruz, Sonia López, and Karelys Correa. (Docket No. 42-10 at

15  18.)

16       Díaz became the manager of Plaintiff's division in April 2006.

17  (Docket No. 42-13.) Díaz was responsible for monitoring the

18  compliance of sales representatives with sales quotas. (Id.) To carry

---

[1] We note that Plaintiff's submissions have generally failed to
support her opposition to Defendants' proffered facts with relevant
evidence. (See Docket Nos. 53, 66.) Her blanket denials for immateriality
are particularly egregious, as it captures pertinent facts such as the date
of her termination. (See id.) Nevertheless, as Plaintiff's submissions
proffer facts which relate to her opposition (see Docket No. 53), we
decline to strike her submissions (Docket No. 58). At the same time, we
wish to remind Plaintiff's counsel of the proper procedures relating to
summary judgment and his duty of diligence. See L.Cv.R. 56(c), 83.5(a); ABA
Model Rules of Prof'l Conduct R. 1.3.

1    out his duties, Díaz routinely reviewed an electronic database of

2    information gathered by Lexmark's sales representatives on market

3    demand for its hardware. (Id.) The accuracy of this database depends

4    on regular entry of reports on new sales opportunities by sales

5    representatives. (Docket No. 42-12 at 1-4.)

6        Fernández began working for Lexmark as its general manager for

7    Puerto Rico in October 2007. (Docket No. 42-2.) His duties included

8    increasing sales to meet sales quotas. (Id.) Fernández determined

9    that the company operations failed to achieve sales targets. (Id.)

10   He then convened a company-wide meeting to motivate employees to

11   attain better results. (Id.) During this meeting, Fernández recounted

12   an episode from his previous position in human resources for IBM.

13   (Id.) He recalled that a younger candidate for a position volunteered

14   to yield his earlier time-slot for an interview when an older

15   candidate complained about the wait. (Id.) This younger candidate's

16   positive attitude so impressed Fernández that he chose this candidate

17   over the others. (Id.) Following this anecdote, Fernández proceeded

18   to cite three Lexmark employees with a similarly-positive attitude.

19   (Id.) These employees were ages forty-nine, twenty-five, and thirty-

20   two years. (Id.) Plaintiff, who attended the meeting, asserts that

21   Fernández' statements implied a preference for "young" and "dynamic"

22   employees. (Docket No. 53-2.)

23       Fernández proceeded to work with Díaz to revamp operations by

24   requiring employees to meet individual targets for finding new "sales

1    opportunities," i.e., potential purchase orders, for each of the five

2    final weeks of 2007. (Docket No. 42-13.) The cumulative targets that

3    Fernández and Díaz set for Plaintiff were $46,000 by November 30,

4    2007; $92,000 by December 7, 2007; $138,000 by December 14, 2007;

5    $184,000 by December 21, 2007; and $230,000 by December 28, 2007.

6    (Id.; Docket No. 42-14 at 17.) Plaintiff's entries into the database

7    showed only $9,000 in new potential sales as of November 26, 2007.

8    (Id.) By December 7, 2007, Plaintiff projected $14,530 in new sales

9    opportunities for the first quarter of 2008. (Docket Nos. 42-13, 42-

10   14 at 20-21.)

11       Fernández and Díaz began to consider major restructuring to

12   Lexmark's sales operations in late 2007. (Docket No. 42-2.) On

13   December 7, 2007, Fernández wrote Martin to inform him that of the

14   four sales representatives, Plaintiff and Cruz had the worst

15   performance, as each generated only $1,000 in sales in the fourth

16   quarter of 2007. (Docket No. 42-3 at 3-4.) Fernández noted that

17   although Plaintiff showed an unwillingness to cooperate with his new

18   initiatives, he expected her to improve her performance and he

19   intended to assess her work again in the future. (Id.)

20       Fernández and Díaz met weekly with underperforming salespersons

21   in "Red Flag Coaching Sessions." (Docket No. 42-2.) Sales

22   representatives who achieved their allotted quotas were not required

23   to attend these remedial meetings. (Id.) Fernández and Díaz met with

24   Plaintiff on the afternoon of Friday, December 7, 2007, to discuss

her failure to meet her cumulative targets and recommend ways to improve. (Id.) During the session, Plaintiff did not mention any pending new potential sales that she had identified but not yet entered into the database. (Id.) In the course of their meeting, Fernández reemphasized his preference for "dynamic" approaches by employees. (Docket No. 53-2.) That same weekend, Plaintiff entered over $400,000 in potential sales which she attributed to the Puerto Rico Department of Education. (Docket Nos. 42-13, 42-14 at 26-28.) Fernández doubted the veracity of these entries as the public agency does not operate over the weekend. (Docket No. 42-2.) On December 10, 2007, Fernández sent Plaintiff an e-mail to convey his concern about her performance and recommend ways for her to improve. (Docket No. 42-3 at 5-6.) However, as Plaintiff had met her individual target for the following week, Díaz declined to conduct another Red Flag session with her. (Docket Nos. 53-6, 53-10, 55-2.)

On December 11, 2007, Plaintiff directed a formal complaint by e-mail to Martin, Lexmark's human resources manager for Puerto Rico. (Docket Nos. 42-4, 42-7 at 4.) The message took general issue with the negative attitude that Plaintiff perceived from her superiors but did not accuse Lexmark of engaging in prohibited conduct. (See Docket No. 42-7 at 4.) On December 20, 2007, Martin called Plaintiff by telephone to address her complaint. (Docket No. 42-7 at 10-11.) During the conversation, Plaintiff expressed deep anxiety arising in part from the company-wide meeting, in which she maintained that

1    Fernández stated a preference for "young" professionals. (Id.)
2    Plaintiff also felt threatened by competition from coworkers and
3    believed that Díaz gave undue recognition to another employee for
4    Plaintiff's efforts. (Id.) Lastly, Martin noted that Plaintiff
5    alleged age and sex discrimination. (Id.)

6        During her employment with Lexmark, Plaintiff received annual
7    evaluations. For fiscal-year 2004, Plaintiff received a good review
8    for having achieved 153% of her quota for sales of supplies,
9    solicited potential purchases from Universidad Politécnica and Burger
10   King, and received a letter of appreciation from a Lexmark client.
11   (Docket No. 53-7.) For fiscal-year 2005, Lexmark gave Plaintiff a
12   high mark for employee attitude and considered her successful in her
13   commitment to customers, communication skills, teamwork, and
14   knowledge of her work. (Docket No. 53-8.) The same report noted,
15   however, that Plaintiff routinely failed to submit her reports to the
16   database in a timely fashion. (Id.) For fiscal-year 2006, Lexmark
17   ranked Plaintiff as high in communication skills and successful in
18   employee attitude and work-related knowledge. (Docket No. 53-9.)
19   However, the same report noted that Plaintiff only partially met her
20   quota for hardware sales and her target for monthly revenue. (Id.)
21   In addition, the report noted that Plaintiff failed to meet her
22   quotas for sales of supplies and sales of supplies in combination
23   with hardware. (Id.) Lexmark rated her overall employee contribution
24   as "basic." (Id.)

Civil No. 08-1821 (JAF)                                              -7-

Besides the evaluations, Díaz noted in March 2007 that Plaintiff had filed an outdated report on the database; the corrected monthly progress report indicated only one new sales opportunity. (Docket Nos. 42-13, 42-14 at 13-15.) Plaintiff reported no new potential sales in April 2007, and a total of $54,061 for the months of April through June 2007. (Docket No. 42-14 at 16.) By comparison, her coworkers, Correa and López, reported $292,378 and $172,757, respectively, for the same three-month period. (Id.) Plaintiff's quota for hardware sales in 2007 was $775,000, of which she attained only $67,000. (Docket Nos. 42-13, 42-14 at 6.)

In 2007, Plaintiff received the second-lowest salary increase among employees in her office due to her performance relative to her peers. (Docket No. 42-4.) However, among Plaintiff's peers, only Cruz received a higher base salary than Plaintiff due to better evaluations from 2004 to 2006 and significantly-longer employment with Lexmark. (Docket Nos. 42-5, 42-10 at 14-18.)

On December 28, 2007, Fernández addressed an e-mail to Viloria, Lexmark's regional general manager, in which he proposed a reorganization that contemplated the possible termination of Plaintiff. (Docket No. 42-3 at 9-10.) After reviewing Plaintiff's personnel records, Díaz recommended her for dismissal based on her sub-par performance. (Docket No. 42-13.) Lexmark terminated Plaintiff following a meeting on January 8, 2008, which Díaz and Martin attended. (Id.) At the time of her dismissal, Plaintiff was forty-

1   five years old.  Her three peers at Lexmark, Cruz, López, and Correa,

2   were aged thirty-eight, forty-two, and twenty-seven, respectively.

3   (Docket No. 42-10 at 18.)

4       Lexmark replaced Plaintiff with Antonio Jardón, a fourth-level

5   account manager; Plaintiff had been a level-three employee. (Docket

6   Nos. 42-5, 42-10 at 2.) Lexmark later terminated Cruz on April 18,

7   2008, for performance-related reasons. (Docket Nos. 42-2, 42-13, 42-

8   5, 42-10 at 20.) On April 24, 2008, Plaintiff filed a charge with the

9   Equal Employment Opportunity Commission ("EEOC"), alleging sex and

10  age discrimination and retaliation, but omitting reference to any

11  alleged misconduct due to her national origin or disability. (Docket

12  No. 42-19.)

13      On July 29, 2008, Plaintiff filed the present complaint in

14  federal district court. (Docket No. 1.) On May 1, 2009, Defendants

15  moved for summary judgment. (Docket No. 41.) Plaintiff opposed on

16  June 1, 2009 (Docket No. 54), and Defendants replied on June 15, 2009

17  (Docket No. 59).

18                                  **II.**

19                  **Summary Judgment under Rule 56(c)**

20      We grant a motion for summary judgment "if the pleadings, the

21  discovery and disclosure materials on file, and any affidavits show

22  that there is no genuine issue as to any material fact and the movant

23  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

24  A factual dispute is "genuine" if it could be resolved in favor of

1   either party, and "material" if it potentially affects the outcome of

2   the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st

3   Cir. 2004).

4          The movant carries the burden of establishing that there is no

5   genuine issue as to any material fact; however, the burden "may be

6   discharged by showing that there is an absence of evidence to support

7   the non-movant's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325,

8   331 (1986). The burden has two components: (1) an initial burden of

9   production, which shifts to the non-movant if satisfied by the

10  movant; and (2) an ultimate burden of persuasion, which always

11  remains on the movant. <u>Id.</u> at 331.

12         In evaluating a motion for summary judgment, we view the record

13  in the light most favorable to the non-movant. <u>Adickes v. S.H. Kress</u>

14  <u>& Co.</u>, 398 U.S. 144, 157 (1970). However, the non-movant "may not

15  rely merely on allegations or denials in its own pleading; rather,

16  its response must . . . set out specific facts showing a genuine

17  issue for trial." Fed. R. Civ. P. 56(e)(2).

18                                    **III.**

19                                  <u>**Analysis**</u>

20         Defendants argue that Plaintiff cannot establish her claims as

21  a matter of law as to age and sex discrimination, hostile work

22  environment and retaliation under Title VII and the ADEA, and the

23  Equal Pay Act. (Docket No. 41.) Defendants also argue that Plaintiff

Civil No. 08-1821 (JAF)                                                    -10-

1    has failed to exhaust her claim for national origin discrimination.

2    (Id.) We address each contention in turn.

3    **A.    Sex Discrimination**

4          Defendants  argue  that  Plaintiff  cannot  establish  sex

5    discrimination as a matter of law because they terminated her for

6    poor  work  performance.  (Docket  No.  41.)  Plaintiff  cites  Díaz'

7    decision  against  holding  a  "Red  Flag"  session  with  her  on

8    December 17, 2007, as evidence that Plaintiff had met Lexmark's

9    expectations. (Docket No. 54.)

10         Absent direct proof of sex discrimination, a plaintiff must meet

11   her  burden  under  a  burden-shifting  framework.  Smith  v.  Stratus

12   Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994).

13                    [T]he  plaintiff  bears  the  initial  burden  of
14                    establishing  a  prima  facie  case  .  .  .  [by]
15                    show[ing]  that  (1)  she  is  a  member  of  a
16                    protected  class;  (2)  she  was  performing  her  job
17                    at  a  level  that  rules  out  the  possibility  that
18                    she  was  fired  for  inadequate  job  performance;
19                    (3)  she  suffered  an  adverse  job  action  by  her
20                    employer;  and  (4)  her  employer  sought  a
21                    replacement  for  her  with  roughly  equivalent
22                    qualifications.

23   Id. (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir.

24   1991)); see also Fontanez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 55

25   (1st Cir. 2006) (citing Stratus Computer, 40 F.3d at 15). If the

26   plaintiff  satisfies  this  first  step,  the  employer  must  then

27   "articulate[]  a  legitimate,  non-discriminatory  reason  for  its

28   decision." Id. at 16. "The plaintiff must then introduce sufficient

1    evidence to . . . [show] (1) that the employer's articulated reason

2    for the job action is a pretext, and (2) that the true reason is

3    discriminatory." Id. (citing Woods v. Friction Materials, Inc., 30

4    F.3d 255, 260 (1st Cir. 1994)).

5        In 2006, Plaintiff only partially met her targets for hardware

6    sales and monthly revenue. (Docket No. 53-9.) In 2007, Plaintiff

7    achieved only 8.6% of her quota for hardware sales. (Docket Nos. 42-

8    13, 42-14 at 6.) Plaintiff's sales figures from April through June

9    2007 were substantially lower than those of her colleagues. (Docket

10   No. 42-14 at 16.) Therefore, the record demonstrates Plaintiff's

11   disappointing performance, at least from Lexmark's perspective, in

12   2006 and 2007, as she fell far short of her sales targets. Moreover,

13   Lexmark maintains that it terminated Plaintiff on account of her poor

14   sales record. (Docket No. 42-13.)

15       Lastly, Díaz' note dated December 17, 2007, suggested that

16   Plaintiff had found sufficient sales prospects to meet targets for

17   the next quarter. (Docket Nos. 53-11, 55-2.) However, a single note

18   does not vitiate substantial evidence of Plaintiff's failure to meet

19   sales targets.[2]  As Plaintiff cannot show that her performance met

20   Lexmark's expectations, she cannot establish a claim for sex

21   discrimination. See Fontanez-Nuñez, 447 F.3d at 55.

---

[2] We note that Fernández suspected that Plaintiff's reported figures after December 7, 2007, were false. (Docket No. 42-2.)

Civil No. 08-1821 (JAF)                                          -12-

**B.   Age Discrimination**

Defendants contend that Plaintiff cannot establish age discrimination because they terminated her for poor work performance. (Docket No. 41.) To prove a prima-facie case for age discrimination without direct proof, a plaintiff "must adduce evidence that (1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action . . .; and (4) the employer had a continuing need for the . . . position from which the claimant was discharged." González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002).  If the plaintiff satisfies this initial burden, the defendant must posit "a legitimate, non-discriminatory basis for its adverse employment action." Id. at 69. The plaintiff must then show that age was, nonetheless, a motivating factor, such as by attacking the proffered reason as pretextual.  Id.

The foregoing discussion on sex discrimination applies here, mutatis mutandis, with equal force, as Plaintiff cannot show that she satisfied Lexmark's legitimate expectations. See supra part III-A. The facts are the same, and the necessary prima-facie showings for sex and age discrimination are virtually identical. Compare Stratus Computer, 40 F.3d at 15 with El Día, 304 F.3d at 68 n.5.

**C.   Hostile Work Environment**

Defendants argue that Plaintiff cannot establish her claims for hostile work environment under Title VII and the ADEA because she

Civil No. 08-1821 (JAF)                                          -13-

1   cannot demonstrate that the abuse against her was sufficiently

2   severe. (Docket No. 41.) To establish a claim for hostile work

3   environment sexual harassment under Title VII, a plaintiff must show:

4               (1) that she . . . is a member of a protected
5               class; (2) that she was subjected to unwelcome
6               sexual harassment; (3) that the harassment was
7               based upon sex; (4) that the harassment was
8               sufficiently severe or pervasive so as to alter
9               the conditions of plaintiff's employment and
10              create an abusive work environment; (5) that
11              sexually objectionable conduct was both
12              objectively and subjectively offensive, such
13              that a reasonable person would find it hostile
14              or abusive and the victim in fact did perceive
15              it to be so; and (6) that some basis for
16              employer liability has been established.

17  Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394-95 (1st Cir. 2002).

18  The standard for severity and pervasiveness of workplace hostility

19  must be sufficiently demanding so as not to transform Title VII into

20  a general code of civility; thus, "sporadic use of abusive language,

21  gender-related jokes, and occasional teasing" do not suffice to

22  establish a prima facie case. Faragher v. City of Boca Raton, 524

23  U.S. 775, 788 (1998).

24      To establish a hostile work environment under the ADEA, a

25  plaintiff must show that the severity and pervasiveness of the

26  harassment were sufficient to be objectively abusive, and that she

27  subjectively perceived the environment to be hostile. Rivera-

28  Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir.

29  2001) (citing Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607,

30  613 (1st Cir. 2000)). "When assessing whether a workplace is a

Civil No. 08-1821 (JAF)                                                -14-

1    hostile   environment,   courts   look   to   the   totality   of   the
2    circumstances, including the frequency of the discriminatory conduct;
3    its severity; whether it is threatening or humiliating, or merely an
4    offensive utterance; and whether it unreasonably interferes with the
5    employee's work performance." Id. (citing Landrau-Romero, 212 F.3d at
6    613). Verbal abuse directed at a plaintiff's poor work performance,
7    rather than her age, does not violate the ADEA.  Young v. Will County
8    Dep't of Pub. Aid, 882 F.2d 290, 294 (7th Cir. 1989).

9        The record in this case is devoid of any demeaning remarks by
10   Defendants targeting Plaintiff on account of her sex. Therefore,
11   Plaintiff cannot establish a claim for sexual harassment as a matter
12   of law. See Crowley, 303 F.3d at 394-95.

13       The record also fails to show Defendants' persistent animosity
14   towards Plaintiff on account of her age. At best, Plaintiff could
15   point to Fernández' presentation in October 2007 where he described
16   his preference for a younger employee with dynamism, or Plaintiff's
17   "Red Flag" session where Fernández reemphasized his preference for
18   dynamism. (Docket No. 53-2.) However, this court has previously held
19   that "[t]he word 'dynamic' is simply not a synonym for 'young.'"
20   Rodríguez-Áviles v. Banco Santander de P.R., 467 F. Supp. 2d 148, 155
21   (D.P.R. 2006). The other negative exchanges with Lexmark officers
22   were primarily directed at her lackluster performance relative to her
23   coworkers. (Docket Nos. 42-2, 53-2.) Therefore, Plaintiff cannot

1   establish a claim for age-based harassment as a matter of law. See

2   Rivera-Rodríguez, 265 F.3d at 24; Young, 882 F.2d at 294.

3   **D.   Retaliation**

4       Defendants argue that Plaintiff cannot establish her claims for

5   retaliatory termination under Title VII or the ADEA as Lexmark

6   discharged Plaintiff due to her poor performance. (Docket No. 41.)

7   In response, Plaintiff insists that Lexmark's proffered motive for

8   termination is pretextual. (Docket No. 54.)

9       To establish a claim for retaliation, a plaintiff must satisfy

10  her burden in accordance with a burden-shifting framework. See

11  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir.

12  2004). For a prima-facie case of retaliation under Title VII, a

13  plaintiff must "prove that (1) she engaged in protected conduct under

14  Title VII; (2) she suffered an adverse employment action; and (3) the

15  adverse action was causally connected to the protected activity."

16  Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002) (citing

17  Hernández-Torres v. Intercont'l Trading, Inc., 158 F.3d 43, 47 (1st

18  Cir. 1998)). Similarly, to establish retaliation under the ADEA, a

19  plaintiff must show that (1) she opposed age discrimination at work;

20  (2) she suffered an adverse employment action; and (3) there is a

21  causal connection between the protest and the adverse action.

22  Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67,

23  84 (1st Cir. 2005).

"An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996)) (internal quotation marks omitted). In showing her opposition to an unlawful practice, she need not prove its actual illegality, but rather that she had a good faith, reasonable belief as to its unlawfulness. Id. (citing Wimmer v. Suffolk County Police Dep't, 176 F. 3d 125, 134 (2nd Cir. 1999)). To show causation purely on the basis of "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," "the temporal proximity must be very close." Calero-Cerezo, 355 F.3d at 25 (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)) (internal quotation omitted).

If the plaintiff establishes a prima-facie case, the "defendant must articulate a legitimate, non-retaliatory reason for its employment decision." Id. at 26. The plaintiff must then rebut this excuse by showing that it "is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id. However, on summary judgment, "'a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a

question for the factfinder as to pretext and discriminatory animus.'" Id. (quoting Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535-36 (1st Cir. 1996)).

"[P]retext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 68 (1st Cir. 2008). Without a specific policy, however, a company's "flexible or discretionary" approach to personnel matters does not imply the existence of a standard practice. Id. at 69 (finding no standard practice where defendant frequently reviewed employee records on case-by-case basis before termination).

In her sole complaint to Martin on December 20, 2007, Plaintiff accused Lexmark's management of sex and age discrimination. (Docket No. 42-7 at 10.) By opposing perceived discrimination, Plaintiff's communication satisfied the first element for retaliatory discharge. See Marrero, 304 F.3d at 22; Ramírez Rodríguez, 425 F.3d at 84. Defendants terminated Plaintiff soon thereafter, on January 8, 2008 (Docket No. 42-13), thereby satisfying the second element of adverse employment action. See Marrero, 304 F.3d at 22; Ramírez Rodríguez, 425 F.3d at 84. The temporal proximity, about three weeks, between Plaintiff's complaint to Martin and her termination could satisfy the causal element. See Calero-Cerezo, 355 F.3d at 26 (holding that one-month span between complaint and adverse employment action demonstrated causation for prima-facie case). But see Freadman v.

1    Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 100-01 (1st Cir. 2007)

2    (citing plaintiff's insubordination to vitiate inference of causation

3    from temporal proximity).

4         Therefore, the burden shifts to Defendants to state a legitimate

5    reason for Plaintiff's discharge. See Calero-Cerezo, 355 F.3d at 26.

6    Defendants had noticed Plaintiff's mediocre performance as part of

7    their discussions on restructuring as early as December 7, 2007.

8    (Docket No. 42-3 at 3-4.) There is ample evidence that Defendants

9    accounted for Plaintiff's performance in making the final decision.

10   (Docket No. 42-13; see Docket Nos. 42-13, 42-14, 53-9.) Therefore,

11   Defendants can point to Plaintiff's poor performance as a legitimate

12   excuse to fire her. See Calero-Cerezo, 355 F.3d at 26.

13        In response, Plaintiff accuses Defendants of departing from

14   their usual practice of filing a report on an employee's under-

15   performance before terminating her. (Docket No. 54.) In the excerpt

16   from Díaz' deposition testimony cited by Plaintiff, Díaz stated, "It

17   was common for us to prepare the report and notify the sales person:

18   'This is where you're at now.'" (Docket No. 53-10.) This testimony

19   simply suggests that Lexmark frequently, but not necessarily always,

20   filed reports on employee performance and notified them about under-

21   performance. (See id.) Thus, the excerpt cannot demonstrate the

22   existence of a standard policy. See Kouvchinov, 537 F.3d at 68.

23        Furthermore, the transcript merely shows that Díaz could not

24   recall whether he had filed a report during a particular week when a

1   full month elapsed between Plaintiff's "Red Flag" session and her

2   subsequent discharge. (See Docket No. 53-10.)  The testimony does not

3   prove that Defendants failed to follow their usual practice even if

4   it constituted standard policy. Indeed, the record suggests that

5   Defendants substantially followed routine by voicing their concerns

6   to Plaintiff personally on December 7, 2007 (Docket No. 42-2) and by

7   e-mail on December 10, 2007 (Docket No. 42-3 at 5-6).  In view of the

8   substantial evidence suggesting Plaintiff's under-performance, and

9   without conclusive proof of Defendants' deviation from standard

10  practice, we cannot surmise that Defendants' proffered motive is

11  pretextual. See Calero-Cerezo, 355 F.3d at 26 (rejecting plaintiff's

12  rebuttal as she "failed to point to specific facts that would

13  demonstrate any sham or pretext intended to cover up defendants'

14  retaliatory motive," and defendants had stated a legitimate excuse).

15      As an alternate basis for finding pretext, Plaintiff notes that

16  Díaz had informed her on December 17, 2007, that she had achieved her

17  sales targets. (Id.) We have previously dismissed the import of Díaz'

18  communication dated December 17, 2007, in view of substantial

19  evidence supporting Plaintiff's poor performance. See supra part III-

20  A. Without greater proof of a discriminatory motive on the part of

21  Defendants, we decline to second-guess Lexmark's business decision in

22  dismissing Plaintiff for her failure to meet sales targets. See

23  Calero-Cerezo, 355 F.3d at 26. Accordingly, Plaintiff cannot

1    establish a case for retaliation either under Title VII or the ADEA.

2    See Marrero, 304 F.3d at 22; Ramírez Rodríguez, 425 F.3d at 84.

3    **E.   Equal Pay Act**

4         Defendants argue that Plaintiff cannot establish a case for

5    disparate pay due to her gender as she fails to name specific

6    employees for comparison. (Docket No. 41.) Under the Equal Pay Act,

7    employers may not discriminate "between employees on the basis of sex

8    by paying wages . . . at a rate less than the rate at which he pays

9    wages to employees of the opposite sex . . . for equal work on jobs

10   the performance of which requires equal skill, effort, and

11   responsibility, and which are performed under similar working

12   conditions, except where such payment is made pursuant to (i) a

13   seniority system; (ii) a merit system; (iii) a system which measures

14   earnings by quantity or quality of production; or (iv) a differential

15   based on any other factor other than sex." 29 U.S.C. § 206(d)(1). To

16   establish a claim, a plaintiff must show "that the employer paid

17   different wages to specific employees of different sexes for jobs

18   performed under similar working conditions and requiring equal skill,

19   effort and responsibility." Ingram v. Brink's, Inc., 414 F.3d 232,

20   232 (1st Cir. 2005).

21        Plaintiff has failed to cite specific male coworkers with equal

22   qualifications who have been paid greater compensation. (See Docket

23   Nos. 1, 54.) As Defendants note, the only plausible candidate would

24   have been Cruz, but he had achieved greater seniority and performance

1   than Plaintiff. (Docket Nos. 42-5, 42-10 at 14-18.) Accordingly,

2   Plaintiff cannot establish a claim under the Equal Pay Act as a

3   matter of law. See Ingram, 414 F.3d at 232.

4   **F.   National Origin Discrimination**

5       Defendants contend that Plaintiff has not exhausted her claim

6   for national origin discrimination by including the allegation in her

7   charge before the EEOC. (Docket No. 41.) Before commencing an action

8   under Title VII in federal district court, a plaintiff must file a

9   charge before the EEOC alleging the same violation. Franceschi v.

10  U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008). In

11  Puerto Rico, a plaintiff must have filed the charge within 300 days

12  of an allegedly illegal employment action. 42 U.S.C. § 2000e-5(e)(1);

13  29 C.F.R. § 1601.74.

14      On April 24, 2008, Plaintiff filed a charge with the EEOC,

15  alleging sex and age discrimination and retaliation, but did not

16  accuse Defendants of misconduct due to her national origin. (Docket

17  No. 42-19.) Therefore, Plaintiff's claim under Title VII for national

18  origin discrimination is barred for her failure to exhaust her

19  remedies before the EEOC. See Franceschi, 514 F.3d at 85.

20  **G.   Claims under Puerto Rico Law**

21      As we order summary judgment in favor of Defendants on all

22  federal claims, we decline to exercise supplemental jurisdiction over

23  Plaintiff's associated claims under Puerto Rico law. See 28 U.S.C.

24  § 1367(c)(3); Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992).

1                                **IV.**

2                           <u>**Conclusion**</u>

3        Accordingly, we hereby **DENY** Defendants' motion to strike (Docket

4   No. 58). We hereby **GRANT** Defendants' motion for summary judgment

5   (Docket No. 41). We **DISMISS** all federal claims **WITH PREJUDICE**, and

6   **DISMISS** all claims under Puerto Rico law **WITHOUT PREJUDICE** (Docket

7   No. 1).

8        **IT IS SO ORDERED.**
9
10       San Juan, Puerto Rico, this 5th day of August, 2009.
11
12                                      s/José Antonio Fusté
13                                      JOSE ANTONIO FUSTE
14                                      Chief U.S. District Judge